# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-KA-01963-COA

COURTNEY R. LOGAN A/K/A COURTNEY           APPELLANT
LOGAN

v.

STATE OF MISSISSIPPI           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/28/2012 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FIVE COUNTS OF KIDNAPPING, ONE COUNT OF AIDING ESCAPE, AND ONE COUNT OF FELON IN POSSESSION OF A FIREARM, AND SENTENCED, AS A HABITUAL OFFENDER, TO LIFE ON EACH COUNT, ALL CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 08/18/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1. This appeal proceeds from a judgment of conviction following a jury trial in the

Circuit Court of Leflore County, where the jury found Courtney Logan guilty on five counts

of kidnapping, one count of aiding escape, and one count of felon in possession of a firearm.[1]

Logan was sentenced, as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Supp. 2014), to seven consecutive life sentences without the possibility of parole. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On June 25, 2009, transportation sergeants Chrissy Flowers, Perry Jones, and Leander Robertson transported two inmates of the Delta Correctional Facility for an eye examination at The Eye Station (the Clinic) in Greenwood, Mississippi. Joseph L. Jackson, one of the inmates, was serving a life sentence in the custody of the Mississippi Department of Corrections (MDOC) at the time.

¶3. The officers and the two inmates arrived at the Clinic approximately ten minutes before the clinic opened at 8 a.m. The officers parked in the back of the building and checked the perimeter of the building. One officer entered the clinic and checked with Ashley Bowlin, an employee of the Clinic, to see if it was okay to bring in the inmates. Officer Robertson then escorted Jackson through the back door, and Officer Jones escorted the other inmate. Officer Flowers, armed with a silver service-weapon revolver, followed behind them and remained at the back door. Jackson was bound in full restraints, which

---

[1] Although we use the singular form of indictment throughout the opinion, we note that the record indicates Logan was charged via two indictments dated the same day – one indictment contains the five kidnapping charges, and the other indictment contains the aiding-escape charge and the felon-in-possession charge.

2

included handcuffs, a waist chain, a black box, and leg irons. After a brief wait, Jackson was called for his exam. Officer Robertson escorted Jackson to an exam room, and he stood by the door to observe Jackson.

¶4. Moments later, Courtney Logan, a cousin of Jackson, entered the Clinic through the back door. Logan, carrying a duffel bag and armed with a black handgun, fired a shot in the air and ordered everyone to get on the floor. Officer Robertson lay down and slid into one of the back exam rooms. Officer Flowers lay down near the back door, and Officer Jones lay down in the waiting-room area. Bowlin slid into another room. Logan came around the corner and ordered Bowlin to open the door. Bowlin opened the door, and Logan held the gun to Bowlin's face and told her he was going to blow her head off. Logan demanded a cell phone from Bowlin, and she replied that she did not have one. Logan walked back around the corner, continued to scream profanities, and demanded the keys. Logan threatened to kill Officer Flowers if she did not give him the keys. He then took Officer Flowers's gun. Logan came back around the corner, stuck his gun in Bowlin's face again, and told her not to move. Logan shot a second time in the air and again threatened to shoot Officer Flowers in the head if he was not given the keys. Officer Robertson came out of the back room and threw the keys on the floor. Logan ordered Officer Flowers to get up and remove Jackson's restraints and shackles, but Officer Flowers was trembling so much that she was unable to unlock them. Jackson then told Officer Flowers to give him the keys so he could take them off.

¶5. Meanwhile, Margaret Davis Chester, the office manager of the Clinic, arrived

3

approximately two or three minutes after 8 a.m. Before Chester entered the Clinic, she heard what sounded like a gunshot. As soon as Chester entered the back door, Logan put a gun in her face, yelled profanities, and ordered her to "get in." Chester, followed by Logan, walked straight to the lab in the Clinic and put down her purse and keys. Chester saw two officers and the other inmate lying on the floor and Jackson in the middle of the room changing clothes with handcuffs dangling from his arm and a duffle bag beside him. Logan then ordered Chester to get on the floor, and she complied.

¶6.    Jackson finished changing and grabbed the duffle bag and keys. Jackson, dragging the restraints marked "CCA," and Logan left the Clinic. After Jackson and Logan exited, Officer Robertson locked the front door, and Chester called 911. Officers from the Greenwood Police Department responded to the Clinic and found two spent nine-millimeter casings – one was found on top of a desk in the Clinic and the other on the floor behind the desk. Three plastic zip ties, often used as restraints, were found in the Clinic's rear parking lot. The officers and the employees of the Clinic all identified Logan at trial, and they all testified that they felt they were not free to leave during their encounter with Logan.

¶7.    On June 25, 2009, Jackson and Logan, traveling in a rented black Dodge Magnum, were stopped on I-40 just outside of Nashville, Tennessee, by Detective Norris Tarkington, a detective of the Metro Nashville Police Department. Jackson and Logan were taken into custody. A dark green duffel bag with brown trim, a cell-phone charger, a black nylon holster, zip ties, leg irons, and handcuffs marked "CCA" were recovered from the vehicle.

4

A loaded nine-millimeter handgun was recovered on top of the console, two nine-millimeter magazines were retrieved from Logan's person, and the service-weapon revolver taken from Officer Flowers was also recovered.

¶8. Logan testified in his own defense at trial, essentially admitting to having committed all the crimes, but claiming duress. Logan testified that Jackson and Jackson's father, Joseph Jackson Sr. (Jackson Sr.), devised a plan to escape during a doctor visit. Logan testified that Jackson Sr. brought him to Greenwood, Mississippi, in April 2009, and showed him the Clinic and the Travel Inn Motel. Logan admitted to following through with the crimes, but claimed his intent was only to follow the orders of his uncle, Jackson Sr., because he felt at the time he had no choice. Logan described Jackson Sr. as ruthless and very persuasive. He testified that Jackson Sr. knew that Logan's weakness was his children, and he feared Jackson Sr. would do something to his children such as "kidnap, snatch up, anything." He also testified that whatever Jackson Sr. wanted, Jackson Sr. was going to get by any means. However, Logan testified that he did not have a close relationship with his uncle. Logan also testified that he did not know Jackson very well, because Jackson had been incarcerated the last ten or eleven years. Logan testified that Jackson threatened Logan's child's life when Jackson text messaged a picture of Logan's six-month-old son and told him, "[Logan's] son looked nice." To Logan, this subliminally meant that "[Jackson] has eyes on my children." Logan testified that "there were no other threats."

¶9. Logan testified that on the June 24, 2009, he and his mother rented the black Dodge

5

Magnum. Logan then went to Jackson Sr.'s house in Louisville, Kentucky, where Jackson Sr. gave him a duffle bag containing a cell phone and charger, zip ties, clothes for Jackson, a nine-millimeter handgun and clips, and a GPS device to guide him to Greenwood. Logan claimed that he asked Jackson Sr. if he would leave him out of it and have someone else go through with it, but Jackson Sr. told Logan no. Logan drove from Louisville, to Greenwood, Mississippi, and checked into the Travel Inn Motel at approximately 3:30 a.m. on June 25, 2009. Jackson Sr. called Logan later that morning for a wake-up call. Shortly after, Jackson called Logan to tell him he was leaving the jail for the Clinic.

¶10. Logan testified that after he picked up Jackson at the Clinic, his next destination was to drop him off with Jackson Sr. and get away as far as possible. Logan testified that he did not resist police when he was stopped in Nashville, Tennessee. However, a motion in limine was filed and granted on the issue of resisting arrest in Nashville because a police officer was shot during the stop. Logan admitted he lied to investigators from the Nashville Police Department and Greenwood Police Department when he initially told them that he picked up Jackson in Memphis, Tennessee. Logan also said he picked up Jackson in Nashville, and that he had never been to Mississippi.

¶11. On March 15, 2010, Logan was indicted for aiding escape of an MDOC inmate and possession of a firearm by a convicted felon. On the same date, the grand jury indicted Logan on five counts of kidnapping. On September 25, 2012, the State moved to charge Logan as a habitual offender, and on November 26, 2012, the trial court entered an order

6

amending the indictment to charge Logan as a violent habitual offender under Uniform Circuit and County Court Rule 7.09 and section 99-19-83.

¶12. On November 27-28, 2012, Logan was tried and convicted on five counts of kidnapping, one count of aiding escape, and one count of felon in possession of a firearm. The trial court sentenced Logan to seven consecutive life sentences without the possibility of parole or probation. Logan filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the trial court denied.

¶13. Logan appeals his conviction, raising the following issues: (1) the evidence was insufficient to support his convictions for kidnapping; (2) the trial court erred in sentencing him as a habitual offender; (3) the trial court erred in refusing jury instruction D-15; and (4) he received ineffective assistance of counsel.

## DISCUSSION

### I. INSUFFICIENT EVIDENCE

¶14. Logan argues that the evidence was insufficient to support his convictions for kidnapping. Logan argues that the confinement of the officers and the employees of the Clinic was incident to the act of aiding Jackson's escape and was of no greater degree than necessary to accomplish Jackson's escape. Logan claims he did not intend to hurt or kidnap anyone and that he fired two shots, held the officers and employees of the Clinic at gunpoint, and threatened to kill them if they did not comply in order to "maintain control." Alternatively, Logan argues that the verdict is against the overwhelming weight of the

evidence under the same reasoning.  We will address both arguments.

a.  *Sufficiency of the Evidence*

¶15.    In reviewing the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005).  "However, this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.*  "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.

¶16.    Mississippi Code Annotated section 97-3-53 (Rev. 2014) provides that kidnapping occurs when "[a]ny person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will[.]"

¶17.    In *Cuevas v. State*, 338 So. 2d 1236, 1238 (Miss. 1976), the Supreme Court of Mississippi stated:

> [T]he present trend by most authorities is not the distance of asportation in kidnapping, but rather the fact of asportation as it relates to the unlawful activity.  If forcible detention or movement is merely incidental to a lesser crime than kidnapping, such confinement or movement is insufficient to be

8

molded into the greater crime of kidnapping.

However, the court explained:

> An illustration might well be a strong-armed robbery where the victim is detained and perhaps moved a few feet while being relieved of his wallet. The detention and movement would not support kidnapping[,] albeit with force and unlawful. On the other hand, if the confinement or asportation be not merely incidental to a lesser crime, but a constituent part of the greater crime, the fact of confinement or asportation is sufficient to support kidnapping without regard to distance moved or time of confinement.

*Id.*

¶18.   In *Cuevas*, a prisoner escaped from the county jail. *Id.* at 1237. During the escape, the prisoner entered an automobile agency and took one of the employees at gunpoint from the service department of the dealership to the parts department. *Id.* The prisoner was convicted of kidnapping. *Id.* On appeal, he argued that the charge of kidnapping was not sufficiently proven. *Id.* The supreme court determined that the prisoner's "purpose in seizing and detaining [the employee] was obviously to make good his escape." *Id.* The Court held:

> The detention was not merely incidental to another and lesser crime. It was a necessary constituent of the crime. The confinement and movement of [the employee] by force from the service entrance of the building to the parts department of the building was sufficiently proved to support Cuevas'[s] conviction.

*Id.* at 1238-39.

¶19.   Here, Logan's purpose in seizing and detaining the officers and employees of the Clinic was to effectuate Jackson's escape as well as his own. Logan held all five individuals

9

at gunpoint. Logan fired his gun twice in the air and took Officer Flowers's weapon during the seizure. Logan threatened to kill Officer Flowers at least two times and an employee of the Clinic at least once. Moreover, Logan ordered Officer Flowers at gunpoint to get up and remove Jackson's restraints. Logan also seized an employee when she entered the Clinic, walked her through at gunpoint, and ordered her to lie on the ground along with the other detained employee and the officers. The detention and movement of the officers and the employees was not merely incidental to another and lesser crime of aiding an escape. The seizure of the employees and officers at gunpoint was a necessary constituent of the crime. We find more than sufficient evidence to support Logan's kidnapping convictions.

¶20. We also rejected a similar argument to Logan's in *Salter v. State*, 876 So. 2d 412, 415 (¶7) (Miss. Ct. App. 2003). In that case, Salter was convicted of burglary, armed robbery, and kidnapping. *Id.* at 414 (¶2). Salter broke into a bank and waited for bank employees to arrive. *Id.* Once the bank employees arrived, Salter, armed with a handgun, held the employees at gunpoint, forced them into the bank vault, and made them lie down on the floor. *Id.* One employee thought she was about to be killed when Salter made her lie face down on the floor. *Id.* at 415 (¶7). Salter closed the bank-vault door and left. *Id.* According to Salter's own testimony, he put bank employees in the vault so that he could effectuate his escape. *Id.* We framed the issue in *Salter* as follows: "The question at bar, therefore, is whether Salter's actions were incidental to a lesser crime or were a constituent part of the greater crime." *Id.* We held that the trial court did not err in accepting Salter's guilty plea

10

in regard to the charge of kidnapping. *Id.* at (¶9). Likewise, there was more than sufficient evidence to support Logan's kidnapping convictions. Logan detained the officers and employees at gunpoint so that he could effectuate both his and Jackson's escape.

b. *Overwhelming Weight of the Evidence*

¶21. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). "The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* "However, the evidence should be weighed in the light most favorable to the verdict." *Id.*

¶22. Logan advances the same argument in support of this assignment of error, which is that the kidnapping is merely incidental to the aiding escape. We disagree and find that the verdict is not against the overwhelming weight of the evidence.

II. HABITUAL-OFFENDER STATUS

¶23. At the outset, we note that Logan did not object to his habitual-offender status at trial or in his JNOV motion; therefore, it is deemed waived. *See Heidelberg v. State*, 45 So. 3d 730, 732 (¶6) (Miss. Ct. App. 2010) (citing *Sims v. State*, 775 So. 2d 1291, 1294 (¶16) (Miss. Ct. App. 2000)) ("The supreme court and this court have previously made clear that: 'When

11

an accused fails to object to the habitual[-]offender issue during the sentencing phase, he is procedurally barred to do so the first time on appeal.'"). Waiver notwithstanding, we will briefly address this issue.

¶24.    Logan argues that the indictment charging him as a habitual offender failed to allege his prior convictions with particularity under Rule 11.03 of the Uniform Rules of Circuit and County Court. Logan also contends that the evidence was insufficient to prove his habitual-offender status beyond a reasonable doubt. Specifically, Logan argues that the State failed to establish that Logan's Kentucky convictions constituted two prior felonies under section 99-19-83.

       *a.      Sufficient Evidence to Establish Habitual-Offender Status*

¶25.    The trial court found that Logan had "previously been convicted of two prior felonies separately brought and arising out of separate incidents at different times and ha[d] been sentenced to and served separate terms of one year or more in a state or federal institution, with one of said felonies being a crime of violence." At trial, the State introduced Exhibit S-17 to prove that Logan had a prior felony conviction in order to establish the charge of possession of a weapon by a convicted felon. Exhibit S-17 contained a certified copy of a judgment of conviction from Kentucky, which provided that on August 8, 2003, Logan pleaded guilty to robbery in the second degree under Kentucky Revised Statutes Annotated section 515.020 in cause number 03-CR-0638. Exhibit S-17 also provided that Logan pleaded guilty to fleeing or evading police in the first degree under Kentucky Revised

12

Statutes Annotated section 520.095 and assault in the fourth degree under Kentucky Revised Statutes Annotated section 508.030 in cause number 03-CR-0610. The fleeing or evading-police charge and assault arose from an incident separate from the robbery.

¶26. Logan argues that the fleeing/evading-police charge does not constitute a felony under Mississippi law; therefore, that conviction is insufficient to support his habitual-offender status.

¶27. Logan was indicted for the offense of fleeing or evading police in the first degree when he, as a pedestrian, with the intent to flee or elude, knowingly and/or wantonly disobeyed an order to stop, given by a person recognized to be a peace officer, and he was fleeing immediately after committing an act of domestic violence. Kentucky Revised Statutes Annotated section 520.095 provides in pertinent part:

(1) A person is guilty of fleeing or evading police in the first degree:

. . . .

(b) When, as a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer, and at least one (1) of the following conditions exists:

1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720 . . . .

. . . .

(2) Fleeing or evading police in the first degree is a Class D felony.

A factual summary of the events that led to Logan fleeing/evading police is described in the

13

pen pack. A police officer was dispatched to a vehicle in reference to Logan, who was seated in the passenger seat, assaulting a female, who was seated in the driver's seat. As the police officer approached a vehicle occupied by Logan and the assault victim, Logan exited the vehicle and ran from the officer despite being instructed to stop. A chase ensued, and the officer eventually detained Logan. Logan pled guilty to this charge and was convicted for fleeing or evading police under Kentucky Revised Statutes Annotated section 520.095(1)(b)(1).

¶28.    Section 99-19-83 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of *any felony* or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, *in any state and/or federal penal institution*, *whether in this state or elsewhere*, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

(Emphasis added). In 2003, Logan was sentenced to and served one or more years in a Kentucky penal institution for the crime of fleeing or evading police, which is, undisputedly, a felony in Kentucky. The plain language of section 99-19-83 does not require that the prior convictions must also be felonies in Mississippi; rather, they must be felonies in the state where the conviction occurred. Logan's Kentucky conviction and sentence for felony fleeing, coupled with a prior conviction and sentence of more than one year for robbery, also

14

in Kentucky, are sufficient to support his habitual-offender status.

¶29.    Relying on *Holland v. State*, 587 So. 2d 848 (Miss. 1991), and caselaw from other jurisdictions, the dissent concludes that Logan's actions that led to a conviction for felony fleeing in Kentucky would not be a felony in Mississippi; therefore, the conviction cannot support Logan's habitual-offender status.  However, we find the dissent's reliance on these authorities is misplaced.

¶30.    First, *Holland* is a death-penalty case that was reversed and remanded for resentencing due to juror misconduct.  *Id*. at 873.  Addressing another issue raised by *Holland*, the Mississippi Supreme Court further explained, in dicta, that "this Court feels compelled to place the State on notice regarding a matter relating to the evidentiary sufficiency of the aggravating circumstance" of Holland's prior conviction in Texas for the rape of a child and whether it involved the use or threat of violence such that it could be relied upon as an aggravating circumstance for the death penalty. *Id.* at 874.  As the dissent notes, the supreme court went on to say that "this Court does not look to how that state characterizes the question of whether the crime was one of violence[;] rather, the analysis must be done under Mississippi law." *Id.*  As we stated above, these statements are dicta and do not have a binding effect. *See Taylor v. State*, 122 So. 3d 707, 714-15 (¶20) (Miss. 2013).  Therefore, because *Holland* discusses a prior conviction in the context of an aggravating circumstance for a sentence of death and not the habitual-offender statute, and the discussion regarding the prior conviction is dicta, we find that *Holland* is inapplicable to the present case.

15

¶31.   Further, as explained above, Mississippi's habitual-offender statute is unambiguous; thus, we do not see the need to consider other jurisdictions' analyses of their own habitual-offender statutes as the dissent would suggest.  This issue is without merit.

   b.   *Insufficient Indictment*

¶32.   Logan also argues that the trial court's order amending his indictment to charge him as a habitual offender does not comply with Rule 11.03.  Rule 11.03(1) provides in pertinent part: "The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment."  However, the record is clear that Logan's indictment, as amended, contains the necessary information to support Logan's status as a habitual offender.  Logan's amended indictment described that, in Kentucky, he had been convicted of felony fleeing on August 8, 2003, and he was sentenced to and served at least one year in prison for that conviction.  Logan was also convicted of robbery in Kentucky on August 8, 2003, and was sentenced to and served more than one year in prison.  The State attached numerous documents to its motion to amend Logan's indictment, including: his indictments describing the crimes with detail, his guilty-plea documents, his judgments of conviction, and a Kentucky Court of Appeals opinion affirming his robbery conviction.  Logan did not object to the introduction of these documents and did not dispute the contents of the documents.  Logan also did not object to the sufficiency of his amended indictment until the present appeal.

16

¶33. Again, we note that the dissent's reliance on its cited authorities is misplaced. The dissent relies on *Heidelberg*, 45 So. 3d 730, for the premise that the failure to attach certified orders of prior convictions to an order amending an indictment is fatal. However, our holding in *Heidelberg* better supports our finding that Logan's indictment was sufficient. We stated:

> [T]here were no uncertainties when Heidelberg stood for sentencing. Prior to trial, the State attached certified copies of Heidelberg's two prior felony sentencing orders to its motion to amend his indictment. The circuit judge then ordered the indictment amended to reflect Heidelberg's prior convictions and habitual-offender status. The circuit court also incorporated an attachment listing the certified sentencing orders into the amended indictment. Thus, Heidelberg clearly had advance notice of the State's intent to seek the enhanced sentence.

*Id*. at 733 (¶13). This is almost precisely what occurred in this case. Prior to trial, the State moved to amend Logan's indictment to reflect his habitual-offender status. As was detailed above, the State attached a variety of documents to support the motion. While the trial court did not expressly incorporate the documents in its order granting the State's motion to amend Logan's indictment, the order did contain the following language referencing the motion to amend: "The prior felony convictions and the sentences imposed, as alleged in said [m]otion to [a]mend, if proven beyond a reasonable doubt, would subject [Logan] to sentencing pursuant to [section] 99-19-83 . . . ." The crux of our holding in *Heidelberg* was that "Heidelberg had sufficient notice and ample opportunity to challenge the qualifying convictions but chose not to do so." *Id*. at 734 (¶16). Based upon the State's motion to amend and the attached documents, plus the trial court's order granting the motion in which

17

it references the motion and attached documents, Logan had sufficient notice of the convictions the State was relying on and an opportunity to challenge these convictions. Logan, like Heidelberg, did not challenge these prior convictions.

¶34.    Because Logan's amended indictment provided all the necessary information pursuant to Rule 11.03, this issue is without merit.

>    c.    *Competent Evidence to Prove Habitual-Offender Status*

¶35.    Logan argues that the State failed to meet its burden of proving his habitual-offender status because the pen packs were never formally introduced into evidence at the sentencing hearing.  Logan's argument is procedurally barred because he did not raise it before the trial court.  *Conner v. State*, 138 So. 3d 143, 150 (¶19) (Miss. 2014).  However, we will address the merits regardless of the procedural bar.  "The best evidence of a conviction is the judgment of conviction."  *Grayer v. State*, 120 So. 3d 964, 969 (¶18) (Miss. 2013).  In *Grayer*, the court held:

> In this case, although the State informed the circuit court that it had certified copies of Grayer's prior convictions and had provided copies to Grayer and his counsel, it failed to place the certified copies into the record or to offer any evidence to support Grayer's habitual-offender status, other than a recitation of his prior felony convictions.  Simply put, the State failed to prove Grayer's prior convictions by competent evidence.  Therefore, we find that the circuit court committed error, rising to the level of plain error, by sentencing Grayer as a habitual offender without evidence of his prior convictions.

*Id.* at (¶19).

¶36.    The supreme court vacated Grayer's sentence and habitual-offender status, and remanded the case to the trial court for resentencing as a nonhabitual offender.  *Id.* at 970

18

(¶22).

¶37. We do not have that problem in this case. Here, at the sentencing hearing, the State requested that the trial court consider evidence of Logan's prior convictions that had been attached to the State's motion and also introduced into evidence at the guilt phase of trial, including: (1) his judgments of conviction for a felony-fleeing-from-a-police-officer count, a misdemeanor-assault count, and a robbery count, and (2) an opinion from the Kentucky Court of Appeals affirming Logan's convictions. The State called Greenwood Police Officer Toby Meredith to testify that the identifying information in Logan's Kentucky records was the same as the identifying information that the Greenwood Police Department had for Logan. The State admitted Exhibits S-32 and S-33, without objection. Exhibits S-32 and S-33 consisted of a "resident record card" from the Kentucky Department of Corrections and a notarized certificate from Robert Belen, the Assistant Branch Manager of Offender Information Services at the Kentucky Department of Corrections, stating the resident record card was a true and correct copy of the original records from his office. The resident record card identified the robbery and fleeing/evading-police convictions along with their separate cause numbers and sentences. Logan did not object to the introduction of the resident card or to the oral reference to the convictions that were previously introduced into evidence at the trial phase.

¶38. Based on the evidence that was presented and admitted regarding Logan's prior convictions, we find that the State produced sufficient evidence to support Logan's habitual-

19

offender status. This issue is without merit.

### III. JURY INSTRUCTION D-15

¶39. Logan argues that the jury instruction concerning the defense of duress or necessity was improperly refused. Instruction D-15 read:

> In this case, the defendant[,] Courtney Logan[,] contends that the acts charged in the indictments[,] namely Aiding Escape and Kidnapping[,] were justified due to duress or necessity.
>
> "Legal justification" means that an otherwise criminal act may not be punished, if that act was necessary in order to avoid a significantly greater evil. The four elements of Mr. Logan's necessity defense are:
>
> 1. That the threat or threats to Mr. Logan, and the fear which the threats caused, were immediate, and involved death or serious bodily injury;
>
> 2. That Mr. Logan's fear was welled-grounded [sic]. This means that Mr. Logan had a good-faith belief in the imminence and severity of the threat, and that belief must also have been objectively reasonable.
>
> 3. That there was no reasonable and legal opportunity to avoid or escape the threatened harm; and
>
> 4. That Mr. Logan made a bona fide good-faith effort to surrender to authorities after he reached a position of safety.
>
> The State must prove all elements of the crimes of Aiding Escape and Kidnapping beyond a reasonable doubt. This means that you may not find Mr. Logan guilty of the crimes charged unless the State proves beyond a reasonable doubt that at least one of the elements of his claimed defense of necessity is not present.

¶40. Logan asserts that he only participated in Jackson's escape because a threat was made on his child. The trial court refused the instruction, finding that a threat of harm to a third person does not support a duress defense. The trial court also determined that any threat

20

made on Logan's child was not imminent. Moreover, the trial court found that Logan had many opportunities to avoid the results.

¶41. "Regarding jury instructions, the trial court possesses considerable discretion." *Young v. Guild*, 7 So. 3d 251, 259 (¶23) (Miss. 2009). "A party is entitled to a jury instruction if it concerns a genuine issue of material fact and there is credible evidence to support the instruction." *Id.* "While a party is entitled to jury instructions that present his theory of the case, this entitlement is limited; the trial court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id*.

¶42. For a defendant to show that he had "an objective need to commit a crime excusable by the defense of necessity, he must prove three essential elements: (1) the act charged was done to prevent a significant evil; (2) there was no adequate alternative; and (3) the harm caused was not disproportionate to the harm avoided." *Stodghill v. State*, 892 So. 2d 236, 238 (¶8) (Miss. 2005).

¶43. We find no error in the trial court exercising its considerable discretion in refusing jury instruction D-15.

¶44. The necessity-defense theory is without foundation in the evidence that was presented at trial. Logan's testimony was unclear as to whether Jackson or Jackson Sr. made a threat to harm Logan's child. At trial, Logan testified that Jackson texted a picture of Logan's child with the message that the child "looked nice." Logan described this message as a

21

"subliminal threat." Certainly any potential threat by Jackson was not objectively reasonable because he was in the custody of MDOC at the time the alleged threat was made.

¶45.    Even though Logan testified that his uncle, Jackson Sr., was ruthless, we do not find any objectively reasonable foundation in the evidence in support of Jackson Sr.'s threats to harm Logan's child if Logan did not go through with the escape plan. No threat made by Jackson Sr. was identified at trial. No evidence was presented showing that Logan's child was in any specific danger. In addition, Logan testified that he did not know Jackson or Jackson Sr. very well. Moreover, we do not find any evidence that Logan was without an adequate alternative to committing the crimes. Logan drove several hours alone from Kentucky to Mississippi to carry out this crime without attempting to contact authorities. Accordingly, we find that the trial court did not abuse its discretion in refusing the instruction.

IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

¶46.    Logan argues he received ineffective assistance of counsel because counsel failed and/or refused to investigate or challenge his extradition from Tennessee, and failed to assert or preserve his right to a speedy trial. However, Logan's brief acknowledges that this issue cannot be adequately addressed without further outside-the-record development of the surrounding facts. Logan raised this issue on direct appeal for the purpose of preserving it for pursuit in postconviction proceedings. This Court "only acts upon matters contained in the official record and not upon assertions in briefs." *Colenburg v. State*, 735 So. 2d 1099,

22

1102 (¶6) (Miss. Ct. App. 1999). The State concedes that this issue is not ripe for appeal because the record is not sufficient to address it. We therefore dismiss Logan's claim of ineffective assistance of counsel without prejudice so that Logan can raise the issue in a petition for postconviction relief. *Reed v. State*, 118 So. 3d 157, 160 (¶12) (Miss. 2013).

CONCLUSION

¶47. We affirm the judgment of conviction of five counts of kidnapping, one count of aiding escape, and one count of possession of a firearm by a convicted felon, and the sentence of life imprisonment on each count.

¶48. **THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT OF CONVICTION OF FIVE COUNTS OF KIDNAPPING, ONE COUNT OF AIDING ESCAPE, AND ONE COUNT OF POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF LIFE ON EACH COUNT, AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONSECUTIVELY ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**JAMES, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶49. I respectfully dissent from the majority's opinion on the issue of Logan's habitual-offender status. The majority is correct that Logan's argument is procedurally barred because he did not raise the argument before the trial court. *Conner v. State*, 138 So. 3d 143, 150 (¶19) (Miss. 2014). However, a defendant has a fundamental right of freedom from an

illegal sentence, and this Court may employ plain-error review if a defendant's substantive or fundamental rights are affected. *Id.* at 150-51 (¶19).

¶50.    Logan argues that the State failed to prove Logan's habitual-offender status beyond a reasonable doubt because Logan's prior conviction for fleeing or evading police in violation of Kentucky Revised Statutes Annotated section 520.095 did not constitute a prior felony under Mississippi Code Annotated section 99-19-83 (Supp. 2014). I agree. Although Logan's prior conviction in Kentucky for fleeing or evading police as a pedestrian is classified as a felony under Kentucky law, it would not constitute a felony under Mississippi law, which the majority acknowledges. For that reason, I would find that the trial court erred by sentencing Logan as a habitual offender.

¶51.    Section 520.095 provides in pertinent part:

(1) A person is guilty of fleeing or evading police in the first degree:

. . . .

(b) When, as a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer, and at least one (1) of the following conditions exists:

1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720 . . . .

. . . .

(2) Fleeing or evading police in the first degree is a Class D felony.

Ky. Rev. Stat. Ann. § 530.095.

24

¶52. However, under Mississippi law, resisting or obstructing a lawful arrest as a pedestrian would fall under Mississippi Code Annotated section 97-9-73 (Rev. 2014), which is a misdemeanor. Specifically, section 97-9-73 provides:

> It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both.

*Id*.

¶53. The Supreme Court's decision in *Holland v. State*, 587 So. 2d 848, 874 (Miss. 1991), is instructive on the issue of whether a prior conviction from a sister state qualifies as a predicate for an aggravating circumstance under this state's statutes. Specifically, the question in *Holland* was whether a prior felony occurring in a sister state constituted a crime of violence under Mississippi law. The *Holland* court held:

> Where as here the conviction occurred in a sister state, this Court does not look to how that state characterizes the question of whether the crime was one of violence[;] rather, the analysis must be done under Mississippi law. For a conviction to qualify as predicate for an aggravating circumstance under this state's statutes, the conviction from the sister state must have been acquired under a statute which has as an element the use or threat of violence against the person or, by necessity, must involve conduct that is inherently violent or presents a serious potential risk of physical violence to another.

¶54. Other jurisdictions provide guidance on this precise issue. The Alabama Court of Criminal Appeals has held: "When the state seeks to use a defendant's out-of-state felony convictions to enhance his sentence under [Alabama's Habitual Felony Offender Act], the

25

state must prove that the conduct for which the defendant was previously convicted constituted a felony in Alabama when it was committed." *R.J.S. v. State*, 905 So. 2d 26, 29 (Ala. Crim. App. 2004); *see also State v. Heath*, 7 P.3d 92, 93 (Ariz. 2000) ("[T]he State may qualify an out-of-state conviction as an enhancing prior felony by establishing that the defendant was convicted under a particular subsection of a foreign statute, if that subsection encompasses only conduct that would constitute a felony in Arizona."). Likewise, in *Justice v. Hedrick*, 350 S.E.2d 565, 568 (W. Va. 1986), the West Virginia Supreme Court of Appeals held: "[W]hether the conviction of a crime outside of West Virginia may be the basis for application of [West Virginia's Habitual Criminal Statute] depends upon the classification of that crime in this State." In support of its decision, the court noted: "Other jurisdictions, in applying recidivist statutes, have determined that out-of-state felony convictions for offenses which do not constitute felonies pursuant to their respective state statutes may not be used for enhancement purposes." *Id.* (citing *Fletcher v. State*, 409 A.2d 1254, 1255 (Del. 1979); *People v. McIntire*, 151 N.W.2d 187, 141 (Mich. Ct. App. 1967); *People v. Carpenteur*, 236 N.E.2d 850, 851 (N.Y. 1968).

¶55. Applying the same reasoning of *Holland* and finding the above cases from other jurisdictions persuasive, I would hold that when determining whether a prior conviction constitutes a felony for purposes of the habitual-offender statute, the analysis must be done under Mississippi law. Because one of the prior convictions used to meet the requirements of section 99-19-83 would not constitute a felony conviction under Mississippi law, Logan

26

was improperly sentenced and should be resentenced as a nonhabitual offender.

¶56.    Although not necessary to my decision, I will address Logan's remaining arguments regarding his habitual-offender status. Logan also argues that the trial court's order amending his indictments to charge him as a habitual offender does not comply with Uniform Rule of Circuit and County Court 11.03. Rule 11.03(1) provides in pertinent part: "The indictment must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment." The trial court entered an order granting the State's motion to amend the indictments. However, the order simply stated, "the indictments in the above styled causes are hereby amended to charge Courtney Logan as a Violent Habitual Offender pursuant to U.C.C.R. [sic] 7.09 and 99-19-83 of the Mississippi Code of 1972, as amended." The order did not specify the prior convictions relied upon and did not attach the prior judgments of convictions to its order. Although the State attached copies of Logan's prior Kentucky convictions to its motion to amend the indictments, it did not incorporate the attachment listing the certified orders to the amended indictments as the trial court did in *Heidelberg v. State*, 45 So. 3d 730, 732-34 (¶13) (Miss. Ct. App. 2010). Thus, the order amending the indictments was not in compliance with Rule 11.03. *See Vince v. State*, 844 So. 2d 510, 516-17 (¶¶16-20) (Miss. Ct. App. 2003) (finding plain error because the indictment failed to comply with Rule 11.03).

¶57.    Logan also argued that the State failed to meet its burden of proving his

27

habitual-offender status by competent evidence because the certified copies of his prior judgments of conviction were never formally introduced into evidence at the sentencing hearing. "The best evidence of a conviction is the judgment of conviction." *Grayer v. State*, 120 So. 3d 964, 969 (¶18) (Miss. 2013). In *Grayer*, the State failed to place the certified copies of the prior felony convictions into the record or to offer any evidence to support the defendant's habitual-offender status other than a recitation of his prior felony convictions. *Id.* at (¶19). Consequently, the supreme court vacated Grayer's sentence and habitual-offender status because the State failed to prove Grayer's prior convictions with competent evidence, and remanded the case to the trial court for resentencing as a nonhabitual offender. *Id.* at 970 (¶22).

¶58. At Logan's sentencing hearing, the State orally requested that the trial court consider and incorporate the evidence of Logan's prior convictions that had been entered into evidence at the guilt phase of trial. Although the State offered a "resident record card" from the Kentucky Department of Corrections and a notarized certificate stating the resident record card was a true and correct copy of the original records, the certified copies of the prior judgments of conviction were never formally introduced into evidence at the sentencing hearing. The State represented that it had the certified copies of the convictions, but nothing in the record reveals why these copies were not offered or received into evidence. *See Vince*, 844 So. 2d at 518 (¶25) ("A prosecuting attorney, intent on proving prior convictions, would do well to heed this simple and straightforward advice from the Mississippi Supreme Court

28

rather than needlessly testing the limits of the rules of evidence by attempting to make do with increasingly remote and less reliable methods of proof."). Accordingly, the State should have offered the certified copies of the convictions into evidence.

¶59. Moreover, it is evident that there was some uncertainty on the proper course to take as it related to the proof required to prove Logan's habitual-offender status. During the sentencing hearing, the following exchange occurred:

| By Mr. Jones: | Judge, the violent habitual then present the two, *withdraw that and present the two judgment of convictions*[sic] *that show his convictions for 99-19[-]81, the nonviolent habitual*[,] *which would carry 10 on each count day for day consecutive*, and then I assume a life sentence would in essence be day for day without parole. |
|---|---|
| By Mr. Gore: | I suggest that we continue sentencing until we've had a chance to figure that out exactly. |
| By Mr. Jones: | I would like to go forward today if the Court is inclined to sentence without the benefit of - - *I will withdraw the violent habitual judge*. |
| By the Court: | Well, it just seems to me that, you know, customarily I'm not sure what proof is required, but customarily you have to have somebody identify this guy as being that guy. |
| . . . . | |
| By Mr. Gore: | Since we are talking about day for day for the rest of his life, my client is inclined to ask for a continuance until we're on solid ground with all of this. He's not going anywhere. |
| By Mr. Jones: | He's just been sentenced to four life sentences or about to be - - five. I don't see what in the world continuing |

29

|  |  |
|---|---|
|  | sentencing would benefit anybody before now. It's simply if you find beyond a reasonable doubt, and you know that, Judge, and I've got an officer. If you do, you do; if you don't, you don't. He's been put on notice of it. |
| By the Court: | . . . So I think I'm gonna go ahead and proceed, so I'm going to deny the request for a continuance. |

(Emphasis added).

¶60. Recognizing the uncertainty surrounding the proof of Logan's habitual-offender status, defense counsel requested a continuance. However, the hearing proceeded and Logan was sentenced as a violent habitual offender even though the State failed to introduce the certified copies of the prior convictions entered into evidence. This failure was compounded by noncompliance with Rule 11.03 and the State appearing to withdraw the violent-habitual charge twice during the sentencing hearing.

¶61. For these reasons, I cannot say that Logan was properly sentenced as a habitual offender under section 99-19-83. I would affirm the judgment of conviction for five counts of kidnapping and sentence of life on each count, to run consecutively. I would also affirm the judgments of conviction for the one count of aiding escape and one count of possession of a firearm by a convicted felon. However, I would reverse Logan's sentence as a habitual offender and remand for Logan to be resentenced as a nonhabitual offender.